AMES FARM LAND COMPANY, INC. v. THOMPSON

___

(July 14, 1927.   Opinion and Decree.)

___

(*Syllabus by the Court*)

1. Louisiana Digest—Obligations—Par. 158.
A putting in mora is not necessary where party refuses to comply with his obligations under the contract.

Appeal from Civil District Court.   Div. "B".   Hon. Porter Parker, Judge.

Action by Ames Farm Land Company, Inc., plaintiff and appellant, against John W. Thompson, defendant and appellee.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Lazarus, Michel and Lazarus, of New Orleans, attorneys for plaintiff, appellee.

P. M. Milner, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J.   This is a suit for damages, ex contractu, in the sum of $525.47.

Plaintiff bought and defendant sold "50 cars of washed gravel, price $1.28 per yard, 2700 lbs., delivered to Southside switch, via T. P., Marrero, La." The contract stipulated that "this material is to be shipped at the rate of two (2) cars per week, however, we (plaintiff) reserve the right to order slower shipment in the event we are unable to handle this amount per week".

The contract was made March 29th, 1922, and eleven of the fifty cars were delivered under its provisions by April 18, 1922, when because of high water in the Mississippi river a suspension of delivery was asked by plaintiff, and assented to by defendant. However, in May, 1922, defendant finding he had some fourteen cars in plaintiff's vicinity, which had been rejected, prevailed upon plaintiff to accept these cars on the contract, which, according to plaintiff, it only agreed to do, as an accommodation to defendant, inasmuch as road work for which the gravel was used had been suspended and the fourteen cars had to remain on its switch track from June to August, when road construction was resumed.

In this spirit of mutual accommodation, the contract had been executed up to this point, when defendant discovers that a mistake had been made, or, at least, became convinced that it had sold the gravel too cheap. An effort was made to have plaintiff voluntarily increase the purchase price without avail, and thereafter no spirit of accommodation is evident.

No written demand for delivery of gravel was made upon defendant until March 12, 1923, which defendant contends was too late. Plaintiff's letter was not answered, and was followed by two more. Finally, on April 2nd, 1923, defendant answered, saying "I have no more gravel to give away".

The contention of defendant is that plaintiff abandoned the contract, because he failed to give orders for delivery of gravel between June 10th, 1922, and March 12th, 1923, the date of plaintiff's letter making demand for the delivery of the 25 cars due on the contract.

It is also contended that the right reserved to plaintiff under the contract to "order slower shipment in the event we are unable to handle this amount per week" does not mean that shipment can be sus-

pended, no matter for how short a period of time, but merely that the number of cars can be reduced from 2 to 1 per week, and it is finally urged that there was no putting in default, a necessary prerequisite to a claim for damages for a passive breach of contract.

We find no justification for the claim that plaintiff abandoned the contract. The interruption of deliveries, due to the threat of high water, was originally agreed to by both parties, as was the delivery of the fourteen cars, which was done in about fifteen days. The interruption was prolonged to some extent at least by defendant, who desired to see Mr. Eiseman of plaintiff corporation, who was absent from the city, in order to have price of gravel increased. Moreover, the evidence is to the effect that constant telephonic demands were made upon defendant for more gravel. Slower delivery does not mean smaller delivery as defendant maintains in insisting that plaintiff could only reduce the amount of gravel to be delivered from two cars to one under the reservation in the contract allowing slower delivery at plaintiff's option. As to the failure to put defendant in mora, it was not necessary because he declared he would not make further shipments of gravel under the contract. Milam Morgan Company, Ltd., vs. Atlantic Fruit Co., 12 Orl. App. 306, Stockelback vs. Bradley, 159 La. 336, 105 So. 363.

We are convinced that the whole difficulty in regard to this gravel contract was due to defendant's discovery that the price he made was too cheap, or, as he puts it in finally refusing to complete deliveries under the contract, "I have no more gravel to give away".

Defendant, we conclude, breached a contract which obligated him to deliver 25 cars of gravel (25 cars having been delivered) at Marrero, La., Southside switch, T. & P. Ry., at $1.28 per cubic yard of 2700 lbs.

Plaintiff bought from the Fluker Gravel Company, following defendant's refusal to complete his contract, 25 cars of gravel "for road building at 65c per ton of 2000 lbs., railroad weights, f. o. b. cars our pits at Fluker, La."

It is contended that the failure of plaintiff to enter into a contract with the Fluker Company for the 25 cars of gravel upon the precise terms stipulated in the contract with defendant releases defendant from all liability and, we are referred to French Market Ice Mfg. Co. vs. Elias Landaur, Receiver et al., 4th Orl. App. 87, as authority for that proposition.

In the cited case it was held that a surety "is relieved from liability by a substantial change in the plans made by the obligee without his knowledge or consent". In the case at bar we are not considering the obligation of a surety whose principal has enlarged his undertaking without consulting him. The question before us is the quantum of damages due for the breach of a contract of sale by the vendor. The rule is that the vendor owes the vendee the difference between the market price and the selling price prevailing at the time and place of delivery. We would be unable to determine this difference in this case for the record is deficient in that respect, were it not for the agreement of counsel that the amount awarded by the trial court in its judgment is correct, assuming there is liability.

For the reasons assigned the judgment appealed from is affirmed.